IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| M.B., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) 1:20-CV-796 |
| | ) |
| CHAPEL HILL-CARRBORO CITY | ) |
| SCHOOLS BOARD OF EDUCATION, | ) |
| *et al.*, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

LORETTA C. BIGGS, District Judge.

Before the Court is a Motion to Dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), filed by Defendants Nancy Kueffer[1], Cheryl Carnahan, Elizabeth Clary, and Ronnie Jackson ("Individual Defendants"). (ECF No. 18.) Plaintiff's grandmother and legal guardian, Jamie Little, initially filed this suit individually and on Plaintiff's behalf on August 31, 2020, alleging violations of federal and state law. (ECF No. 1.) Plaintiff has since turned 18 and, on April 14, 2021, by Order of the Court, was substituted as Plaintiff in this lawsuit. (ECF No. 38.) The Complaint alleges that the Chapel Hill-Carrboro City Schools Board of Education ("Defendant School Board") and Individual Defendants (collectively, "Defendants") were deliberately indifferent toward student-on-student sexual abuse that Plaintiff suffered while he was a minor student attending Defendants' school. (ECF No. 1 ¶ 1.) Individual Defendants now move to dismiss the claims against them.

---

[1] A Stipulation of Voluntary Dismissal, Without Prejudice, as to Defendant Kueffer Only, (ECF No. 33), was filed by the parties on March 31, 2021.

(ECF No. 18.) For the reasons that follow, Individual Defendants' motion is granted in part and denied in part.

I. BACKGROUND

Plaintiff attended Estes Hills Elementary School ("Estes Hills"); a primary school governed by Defendant School Board. (ECF No. 1 ¶¶ 4, 6–7.) Defendant Nancy Kueffer worked for Defendant School Board as the school system's "Coordinator of Exceptional Children Behavior Support and Positive Behavior Intervention and Support Services," and directed "system level programs" at Estes Hills. (*Id.* ¶ 8.) The remaining Defendants each worked at Estes Hills: Defendant Cheryl Carnahan served as Principal, Defendant Elizabeth Clary as Assistant Principal, and Ronnie Jackson as Guidance Counselor. (*Id.* ¶¶ 10, 12, 14.)

According to the Complaint, Plaintiff, a classmate named R.W., and one other student were sexually abused by older students from around 2009 to 2011. (*Id.* ¶ 23.) Primarily while Plaintiff was in first grade, he was subjected to repeated sexual touching and manipulation of his genitalia and anus by two older students. (*Id.* ¶¶ 23–24.) This abuse occurred all over the school: "in the school cafeteria, bathrooms and hallways, at recess on the playground, as well as on the school bus." (*Id.* ¶ 23.)

Individual Defendants first became aware of the abuse when Plaintiff's classmate R.W. reported it to their first grade teacher during the spring of 2011. (*Id.* ¶¶ 33–35, 37.) Plaintiff's teacher brought R.W. to speak with Assistant Principal Clary, but Clary never contacted R.W.'s parents. (*Id.* ¶ 29, 35.) The next morning, Plaintiff's teacher met with Principal Carnahan and Guidance Counselor Jackson. (*Id.* ¶ 37.) Defendants Carnahan and Jackson rebuffed suggestions that notice be sent to parents and the Department of Social Services ("DSS") and instead insisted that the situation was "being handled" and the

2

teacher should "stay out of it." (*Id.*) Plaintiff's teacher "believed the administration 'was trying to sweep what was occurring under the rug.'" (*Id.*) Plaintiff and R.W. continued to be sexually abused after Plaintiff's teacher became aware of the abuse and notified Defendants. (*Id.* ¶ 39.)

Two years later, in the spring of 2013, the new Mental Health Clinician ("Clinician") hired by Estes Hills, became concerned that Plaintiff and R.W. were displaying symptoms of Post-Traumatic Stress Disorder. (*Id.* ¶ 23.) She interviewed the two boys separately, and each reported consistent accounts of the abuse. (*Id.* ¶¶ 24–25.) The Clinician investigated the reports and spoke with (now former) Principal Kueffer, who admitted to knowing of the allegations of abuse but did not believe them because, she said, Plaintiff and R.W. were "manipulative." (*Id.* ¶ 28.) The Clinician also spoke with two representatives from Defendant School Board's District Office, who were aware of "the incidents" and told the Clinician to drop her investigation because "the situation had been resolved." (*Id.* ¶ 27.) The representatives claimed that a local rape crisis center provided counseling to Plaintiff and R.W. and that the boys' guardians had been notified. (*Id.*) The local center had no record of counseling either child, however, and the representatives could produce no evidence that either boy's guardian was notified of their allegations. (*Id.*) Instead, the center was asked to stage a puppet show on unsafe touching for Plaintiff's class, and the boys' guardians were mailed a general announcement describing the puppet show. (*Id.* ¶¶ 27, 30.)

Defendants removed one student who was believed to be Plaintiff's primary abuser from his school bus and temporarily installed "monitors" on the bus, but otherwise did not evaluate, treat, confront, or discipline Plaintiff's abusers. (*Id.* ¶ 38.) Defendants did not notify Plaintiff's guardian when they became aware of the abuse or in the two years

3

thereafter, until the Clinician finally notified Plaintiff's guardian and R.W.'s mother on May 8, 2013. (*Id.* ¶ 29.) As a consequence of the continued and repeated abuse, Plaintiff has suffered physical and psychological injuries, loss of enjoyment of life, emotional distress, and a decline in classroom performance and ability to learn. (*Id.* ¶ 39.)

Count I of the Complaint alleges that Plaintiff was subjected to a hostile educational environment in violation of Title IX of the Educational Amendments of 1972, 20 U.S.C. § 1682 *et seq.* ("Title IX") against Defendant School Board. (*Id.* ¶¶ 40–54.) Count II is brought pursuant to 42 U.S.C. § 1983 alleging violations of the Equal Protection Clause of the Fourteenth Amendment ("§ 1983 claim") against Individual Defendants. (*Id.* ¶¶ 55–65.) Counts III through V allege violations of state common law by Individual Defendants, including claims for negligence and gross negligence (Count III); negligent infliction of emotional distress ("NIED") (Count IV); and intentional infliction of emotional distress ("IIED") (Count V). (*Id.* ¶¶ 66–88.) Finally, Counts VI and VII assert claims for medical and counseling expenses, and for loss of services and companionship, respectively. (*Id.* ¶¶ 89–94.)

Individual Defendants filed the present Motion to Dismiss on November 2, 2020, (ECF No. 18), requesting that all claims against them be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. First, Individual Defendants challenge Count V, arguing that Plaintiff has failed to plead sufficient facts to state a claim for IIED. (ECF No. 19 at 7–9.) They additionally challenge all state law claims, outlined in Counts III through V, against Defendants Kueffer, Carnahan, and Clary, arguing that these Defendants are protected by state public official immunity. (*Id.* at 10–17.) Lastly, Individual Defendants move to dismiss Count II, arguing that: (1) Plaintiff failed to plead sufficient facts to sustain

4

his § 1983 equal protection claim, and (2) alternatively, Defendants Kueffer, Carnahan, and Clary are protected by qualified immunity. (*Id.* at 17–24.)

## DISCUSSION

A motion to dismiss under Rule 12(b)(6) is meant to "test[ ] the sufficiency of a complaint" and not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). To survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In considering a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), and all reasonable inferences must be drawn in the non-moving party's favor, *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).

### A. Intentional Infliction of Emotional Distress ("IIED") (Count V)

Individual Defendants first argue that Plaintiff failed to state a claim for IIED because their conduct was not "extreme and outrageous." (ECF No. 19 at 8–9.)

North Carolina defines the tort of intentional infliction of emotional distress ("IIED") as: "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another." *Dickens v. Puryear*, 276 S.E.2d 325, 332 (N.C. 1981). To state a claim, a plaintiff must allege facts sufficient to show three elements: (1) "extreme and outrageous conduct," (2) "which is intended to cause and does cause" or with "reckless indifference to the likelihood that they will cause," does cause (3) "severe emotional distress to another." *Id.* at 335.

Conduct is extreme and outrageous if it is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Smith-Price v. Charter Behavioral Health Sys.*, 595 S.E.2d 778, 782 (N.C. Ct. App. 2004). "Such conduct differs from behavior universally regarded as inappropriate and abhorrent." *Griffin v. Mortier*, 1:18CV98, 2019 WL 8641158, at *4 (W.D.N.C. Apr. 16, 2019) (internal quotations omitted), *aff'd*, 837 F. App'x 166 (4th Cir. 2020). It is for the court to decide in the first instance as a matter of law "whether the conduct complained of may reasonably be found to be sufficiently outrageous as to permit recovery"; the jury must then determine "whether the conduct complained of is, in fact, sufficiently extreme and outrageous to result in liability." *Hogan v. Forsyth Country Club Co.*, 340 S.E.2d 116, 121 (N.C. Ct. App. 1986).

Courts in this District have found some school officials' responses to allegations of sexual assault to be extreme and outrageous conduct. *See, e.g.*, *McClean v. Duke Univ.*, 376 F. Supp. 3d 585, 614 (M.D.N.C. 2019); *Rouse v. Duke Univ.*, 869 F. Supp. 2d 674, 681–82 (M.D.N.C. 2012); *Mandsager v. Univ. of N.C. at Greensboro*, 269 F. Supp. 2d 662, 683 (M.D.N.C. 2003). In *McClean*, a Gender Violence Coordinator "engaged in a campaign to impugn [a rape victim's] reputation" by: (1) making false stalking reports to police, (2) "disclosing [p]laintiff's confidential sexual assault report widely within the university," (3) causing a police officer to make false statements about [p]laintiff, and (4) "compiling and disseminating negative information about [p]laintiff to destroy her reputation." *McClean*, 376 F. Supp. 3d at 595–96. The District Court found that these allegations were "exacerbated by the fact that [the Coordinator] was supposed to provide [p]laintiff with counselling and other sensitive medical and social services," but instead "abused her

6

position of power within the university to take advantage of [plaintiff's] vulnerability." *Id.* at 614. In *Rouse*, defendant university "wrongfully and publicly suggested that [plaintiff] was to blame for being raped" and "purposefully 'duped' her into withdrawing from school." *Rouse*, 869 F. Supp. 2d at 681. In *Mandsager*, defendant university refused to discipline a faculty member accused of sexual harassment, stating of the harasser, "William will be William," and effectively told plaintiff that she would need to endure the harassment to finish her graduate program. *Mandsager*, 269 F. Supp. 2d at 670. In each case, the conduct was found to be extreme and outrageous.

In contrast, failures to investigate allegations of sexual assault or harassment, though they may be inappropriate and abhorrent, typically do not constitute extreme and outrageous conduct under North Carolina law. *See, e.g.*, *Marshall v. Frederick*, No. 5:19-CV-69-BO, 2019 WL 3822321, at *6 (E.D.N.C. Aug. 14, 2019); *Biggs v. Edgecombe Cty. Pub. Sch. Bd. of Educ.*, No. 4:16-CV-271-D, 2018 WL 4471742, at *11 (E.D.N.C. Sept. 18, 2018); *Cash v. Lees-McRae Coll., Inc.*, No. 1:18CV52, 2018 WL 7297876, at *16 (W.D.N.C. Aug. 13, 2018), *aff'd*, 811 F. App'x 190 (4th Cir. 2020); *J.W. v. Johnston Cty. Bd. of Educ.*, No. 5:11-CV-707-D, 2014 WL 4771613, at *13 (E.D.N.C. Sept. 24, 2014).

Here, Plaintiff alleges that Defendants knew about sexual abuse, failed to adequately respond, and discouraged school employees from investigating the abuse further. These allegations, while they may be inappropriate and abhorrent, are more analogous to the failure to sufficiently investigate or prevent abuse, rather than to those cases where a school official independently harmed an abuse victim. Unlike in *McClean* or *Rouse*, Plaintiff has not alleged that Individual Defendants attempted to publicly discredit or otherwise affirmatively harm him. Unlike in *Mandsager*, Individual Defendants did not take the side of Plaintiff's

7

abusers or tell Plaintiff that he would need to endure the abuse to finish his schooling. Instead, they made some attempt to separate Plaintiff from at least one abuser and educate his classmates on unsafe touching, though these attempts were minimal. While this alleged conduct may establish liability under another legal standard, it does not constitute extreme and outrageous conduct under North Carolina law.

Thus, Plaintiff's claim for IIED must be dismissed.[2]

### B. Public Official Immunity (Counts III through V)

Individual Defendants next argue that Defendants Carnahan and Clary are entitled to public official immunity from Plaintiff's remaining state law claims.[3] (ECF No. 19 at 10–15.)

Under North Carolina law, "a public official, engaged in the performance of governmental duties involving the exercise of judgment and discretion, may not be held personally liable for mere negligence in respect thereto." *Meyer v. Walls*, 489 S.E.2d 880, 888 (N.C. 1997). A public official may nevertheless be liable where his conduct was "(1) corrupt; (2) malicious; (3) outside of and beyond the scope of his duties; (4) in bad faith; or (5) willful and deliberate." *Smith v. Jackson Cty. Bd. of Educ.*, 608 S.E.2d 399, 411 (N.C. Ct. App. 2005).

---

[2] Plaintiff cites to *Smith v. Jackson County Board of Education* to argue that failure to adequately respond to allegations of sexual misconduct may constitute IIED. (ECF No. 27 at 7 (citing *Smith v. Jackson Cty. Bd. of Educ.*, 608 S.E.2d 399, 406–07 (N.C. Ct. App. 2005)).) The court in *Smith* addressed whether that plaintiff's IIED claim was barred by the public duty doctrine, not whether plaintiff alleged extreme and outrageous conduct. *Smith*, 608 S.E.2d at 406–07. Thus, the Court does not find that case to be persuasive here.

[3] Individual Defendants initially argued that Defendant Kueffer is also entitled to public official immunity. (ECF No. 19 at 10.) Jamie Little voluntarily dismissed all claims against Kueffer, rendering this argument moot. (*See* ECF No. 33.)

8

North Carolina courts have allowed public official immunity to be pierced where the public official (1) actually knew of a risk of harm and (2) failed to act to prevent that risk. In *Martin v. Moreau*, for example, public official immunity was pierced where a highway-patrol training officer (1) knew that a cadet had suffered a severe injury but (2) failed to provide aid within a reasonable timeframe. 770 S.E.2d 390, at *5 (N.C. Ct. App. 2015) (unpublished). Similarly, public official immunity was pierced where a sheriff (1) knew that one of his deputies had previously assaulted a minor but (2) nevertheless assigned him to work as a school resource officer. *Smith*, 608 S.E.2d at 411.

Here, Plaintiff alleges that Individual Defendants (1) knew of severe injury—sexual abuse—but (2) failed to take reasonable remedial action. Further, he alleges they (1) knew that older students were abusing him and others but (2) nevertheless allowed them to interact with him on a regular basis. As in *Martin* and *Smith*, here Individual Defendants allegedly failed to act to address a known harm. Thus, Plaintiff has alleged sufficient facts from which one could conclude that public official immunity should be pierced under the circumstances of this case. Accordingly, the Court declines to find that Plaintiff's claims should be dismissed based on public official immunity.

### C. Equal Protection Claim § 1983 Claim(Count II)

Individual Defendants next move to dismiss Plaintiff's equal protection claims. (ECF No. 19 at 17–21.)

"[T]he Equal Protection Clause of the Fourteenth Amendment secures a student's 'right to be free from sexual harassment in an educational setting.'" *Feminist Majority Found. v. Hurley*, 911 F.3d 674, 702 (4th Cir. 2018) (quoting *Jennings v. Univ. of N.C.*, 482 F.3d 686, 701 (4th Cir. 2007)). To state a claim under the Equal Protection Clause for peer sexual

9

harassment, a student must allege: (1) he "was subjected to discriminatory peer harassment"; (2) "the school administrator responded to the discriminatory peer harassment with deliberate indifference, i.e., in a manner clearly unreasonable in light of known circumstances"; and (3) that deliberate indifference "was motivated by a discriminatory intent." *Id.* at 702–03 (internal quotations omitted). A response to alleged peer-harassment constitutes deliberate indifference where the action was not "reasonably calculated to end [the] harassment." *Id.* at 689. Discriminatory intent can be inferred where a defendant knows of sexual harassment but takes little or no action to remedy the abuse. *See T.E. v. Grindle*, 599 F.3d 583, 589 (7th Cir. 2010).

Here, the first element is satisfied because Plaintiff alleges that he was regularly abused by his classmates. The second element is also met because the Individual Defendants knew that R.W. and Plaintiff were being abused but made no effort to interview victims, notify parents, or discipline perpetrators. Defendants' minimal efforts to remove a single student from Plaintiff's bus and install monitors was not "reasonably calculated to end the harassment," since multiple students were abusing Plaintiff and the abuse occurred in more locations than the school bus. Finally, the third element is also adequately pleaded, since the Individual Defendants were either openly skeptical of, or inclined to minimize, Plaintiff's disclosure and did little to stop the alleged harassment—a sufficient basis from which to infer discriminatory intent. Individual Defendants may argue at trial that their responses to the alleged abuse were reasonable or were not motivated by Plaintiff's sex, but at this stage "such suggestions do not mean that [Defendants] are entitled to judgment as a matter of law." *Grindle*, 599 F.3d at 589. Thus, Plaintiff has sufficiently pleaded an Equal Protection § 1983 claim.

10

### D. Qualified Immunity

Finally, Individual Defendants argue that Plaintiff's equal protection claims against Defendants Carnahan and Clary are barred by the doctrine of qualified immunity.[4] (ECF No. 19 at 21–24.)

"Qualified immunity protects officials who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful." *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 537–38 (4th Cir. 2017) (internal quotations omitted). To overcome qualified immunity, a plaintiff must allege (1) defendant infringed on her constitutional right, and (2) the violated right was "clearly established at the time of the official's conduct." *Id.* at 538 (internal quotation omitted). A right is "clearly established" only when it is "settled law, which means it is dictated by controlling authority or a robust consensus of cases of persuasive authority." *Feminist Majority*, 911 F.3d at 704 (quoting *District of Columbia v. Wesby*, 138 S.Ct. 577, 589–90 (2018)).

In *Feminist Majority*, plaintiff argued that she had a clearly established right under the Equal Protection Clause to be free from student-on-student sexual harassment. *Id.* She pointed first to the Supreme Court's decision in *Fitzgerald v. Barnstable School Committee*, which held that victims of peer sexual harassment can pursue an equal protection claim against an individual school employee. *Id.* (citing *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 257–58 (2009)). The Fourth Circuit, however, reasoned that *Fitzgerald* "did not define the applicable standard for an equal protection claim premised on deliberate indifference." *Id.* Plaintiff then argued that the Fourth Circuit's decision in *Jennings* clearly established the

---

[4] Again, Individual Defendants' argument that Defendant Kueffer is also entitled to qualified immunity is moot. (*See* ECF Nos. 19; 33.)

right. *Id.* (citing *Jennings*, 482 F.3d at 701–02). The Fourth Circuit disagreed once again. *Jennings* involved harassing conduct by an administrator, not by a peer, and the Fourth Circuit concluded that "similarities between those two types of claims did not provide fair warning, i.e., 'obvious clarity,' that an insufficient response to student-on-student harassment violates established law." *Id.* at 705 (quoting *E.W. ex rel. T.W. v. Dolgos*, 884 F.3d 172, 185 (4th Cir. 2018)). Finally, the Fourth Circuit found that only three sister circuits had recognized an equal protection claim for student-on-student harassment in 2014, and these circuits "adopted and applied different intent standards for such a claim." *Id.* at 705–06. Consequently, the Fourth Circuit held that, while a student has a fundamental right under the Equal Protection Clause "to be free from a university administrator's deliberate indifference to student-on-student sexual harassment," that right was not clearly established in the Circuit when defendants' conduct occurred. *Id.* at 706.

The conduct assessed in *Feminist Majority* occurred in 2014–2015. *Id.* at 680–84. Here, Plaintiff alleges that Individual Defendants were deliberately indifferent to student-on-student sexual abuse even earlier, from 2011–2013. Thus, *Feminist Majority* governs this issue, and this Court is bound by its determination. No clearly established right prohibited Individual Defendants' behavior in the years they were allegedly deliberately indifferent. In arguing that such a right was clearly established, Plaintiff cites to *Fitzgerald*, *Jenkins*, and several sister circuit cases, all of which were considered and rejected by the Fourth Circuit in *Feminist Majority*.

Thus, Plaintiff's equal protection claims against Defendants Carnahan and Clary are barred by qualified immunity.

## CONCLUSION

12

Plaintiff has not alleged sufficient facts to state a claim for IIED, and while Plaintiff has alleged facts sufficient to support his equal protection claims arising under § 1983, those claims against Defendants Carnahan and Clary are barred by qualified immunity. In addition, Plaintiff has alleged sufficient facts from which public official immunity may be pierced as it relates to his other state law claims. Thus, Individual Defendants' Motion to Dismiss will be granted in part and denied in part.

For the reasons stated herein, the Court enters the following:

## ORDER

**IT IS THEREFORE ORDERED** that the Defendants' Motion to Dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), (ECF No. 18), is GRANTED in part and DENIED in part. It is GRANTED as to Plaintiff's claim arising under 42 U.S.C. § 1983 against Defendants Carnahan and Clary, (Count II) and Plaintiff's IIED claims against all Defendants, (Count V of the Complaint), (ECF No. 1 ¶¶ 55–65, 84–88). It is DENIED as to all other claims against Individual Defendants.

This, the 27th day of September 2021.

/s/ Loretta C. Biggs
United States District Judge

13

Case 1:20-cv-00796-LCB-JEP   Document 39   Filed 09/27/21   Page 13 of 13